1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TONY G. HEWITT,                          )
                                         )        3:11-cv-00598-RCJ-VPC
           Plaintiff,       )
                                         )
        v.                        )        **REPORT AND RECOMMENDATION**
                                       )        **OF U.S. MAGISTRATE JUDGE**
ADAM LUIS, *et al.*,                      )
                                       )
          Defendants.     )        July 2, 2013
_____)

      This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#26).[1]  Plaintiff opposed (#28) and defendants replied (#29).  The court has thoroughly reviewed the record and recommends that defendants' motion for summary judgment (#26) be granted.

## I.  HISTORY & PROCEDURAL BACKGROUND

      Plaintiff Tony G. Hewitt ("plaintiff"), a *pro se* inmate, is currently incarcerated at Northern Nevada Correctional Center ("NNCC") in the custody of the Nevada Department of Corrections ("NDOC") (#8, p. 1).  On January 26, 2012, plaintiff filed a first amended complaint (#8) alleging that defendants Adam Luis, John Peery and Adam Watson were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment (count I); and that these defendants violated Title II of the Americans with Disabilities Act ("ADA") (count II).  *Id.* at 4-5.  The court screened the complaint pursuant to 28 U.S.C. § 1915A, and allowed the following claims to proceed:

---

[1] Refers to the court's docket numbers.

(1) Eighth Amendment claim for deliberate indifference to plaintiff's serious medical needs against defendants Luis and Peery; and (2) ADA claim against defendants Luis, Peery and Watson (#12, p. 5).

In count I, plaintiff alleges that on August 3, 2011, Correctional Officer Adam Luis entered his cell and confiscated his walking cane (#8, p. 4).  Plaintiff alleges that Nurse Sheila Barth had previously authorized the cane, and that he showed defendant Luis the written authorization.  *Id.*  Plaintiff told defendant Luis that without his cane, he was "unable to get around or walk without extreme pain or falling."  *Id.*   However, defendant Luis confiscated the cane, on orders from defendant Peery.  *Id.*  As a result, plaintiff alleges that he suffered severe pain, and that he fell when trying to use the toilet, suffering a back, leg and head injury.  *Id.*

In count II, plaintiff alleges that on August 3, 5, and 12, 2011, he requested his cane, a wheelchair, or a handicapped accessible cell.  *Id.* at 5.  Plaintiff states that his disabilities are well-documented (kidney pain, exhaustion, dizziness, back pain, a fractured tailbone, deteriorated discs, sciatica and left leg numbness), and that he is unable to walk on his own.  *Id.*   Thus, plaintiff contends that defendants' failure to provide him with ambulatory aid denied him "the benefits of medical service and accommodations to use medical devices for disabilities."  *Id.*

Defendants allege that on April 18, 2010, while plaintiff was housed at Nevada State Prison ("NSP"), Nurse Sheila Barth gave plaintiff a cane (#26-1, Ex. A).  On May 4, 2010, Dr. Gedney revised plaintiff's health classification form to accurately reflect his medical condition (#26-2, Ex. J, p. 30).  Dr. Gedney deleted plaintiff's prior health narrative and wrote that plaintiff should be housed at NNCC and was allowed to have a cane (#26-2, Ex. J, p. 30; #26-1, Ex. B, ¶ 7; #26-1, Ex. F, ¶ 6).  On March 16, 2011, plaintiff's health classification form was again revised to reflect his medical condition (#26-2, Ex. J, p. 31).  The doctor did not change plaintiff's health narrative.  *Id.*  On May

11, 2011, plaintiff's health classification form was again revised to reflect his medical condition.  *Id.* at 32.  The doctor deleted plaintiff's prior health narrative and wrote that plaintiff should remain in the Carson City area due to his medical problems (#26-2, Ex. J, p. 32; #26-1, Ex. B, ¶ 9; #26-1, Ex. F, ¶ 8).  The new health classification form took effect on May 11, 2011, and plaintiff was no longer authorized to have a cane (#26-1, Ex. F, ¶ 9).

In August 2011, NNCC was attempting to decrease inmate access to weapons, such as canes, when not medically necessary (#26-1, Ex. B, ¶ 11).  On August 3, 2011, Correctional Officer Luis saw plaintiff moving around his unit and the outside yard without his cane (#26-1, Ex. C, ¶¶ 4-5).  Defendant Luis asked plaintiff why he was not using his cane, and plaintiff replied, "man, why the fuck are you asking?"  *Id.* at ¶ 4.  Defendant Luis told plaintiff that if he was not using the cane, it needed to be turned in.  *Id.*  Thereafter, defendant Luis asked plaintiff for his cane authorization paperwork.  *Id.* at ¶ 6.  Defendant Luis does not recall if plaintiff showed him the authorization form.  *Id.*  After this discussion, defendant Luis contacted medical to see if plaintiff had a physician authorization for his cane.  *Id.* at ¶ 7.  Dr. Johns noted that plaintiff's cane was no longer authorized and that plaintiff appeared to move freely without the cane (#26-1, Ex. F, ¶ 14).  Accordingly, Dr. Johns ordered that plaintiff's cane be removed.  *Id.*  Director of Nursing Services John Peery communicated this information to defendant Luis and made a note in plaintiff's medical file (#26-1, Ex. B, ¶ 15; #26-1, Ex. C, ¶ 8).  Based on this communication, defendant Luis confiscated plaintiff's cane (#26-1, Ex. C, ¶ 9).

On August 12, 2011, at approximately 2:45 a.m., medical staff rushed to plaintiff's cell for a "mandown" (#26-1, Ex. D, pp. 15, 17).  Plaintiff described the incident as follows:

> I went to go pee and my [left] leg gave out.  I hit my head on the wall on my forehead and cut my shin on the toilet.  They took away my cane and I told them I would have problems with my sciatica.

*Id.* at 15. Upon examination, medical staff found a small, half-inch laceration about six inches below plaintiff's left knee and some dried blood. *Id.* Medical staff noted no swelling to plaintiff's legs or knees and no swelling, bruising or abrasions on plaintiff's forehead. *Id.* Medical staff also noted that there was no blood on the toilet or floor. *Id.* Medical staff concluded that plaintiff's laceration was of unknown etiology and was a clean wound. *Id.*

On August 15, 2011, Dr. Johns examined plaintiff and re-authorized his cane—with the caveat that the cane should only be used for night-time mobility and not for daily use (#26-1, Ex. F, ¶ 16).

Defendants move for summary judgment on the grounds that they were not deliberately indifferent to plaintiff's serious medical needs, and they did not violate plaintiff's rights under the ADA (#26, p. 1). Defendants attach several documents to support their motion, including:

1.  plaintiff's April 18, 2010, receipt for prosthetic/medical device (#26-1, Ex. A);[2]

2.  the declaration of John Peery (#26-1, Ex. B);

3.  the declaration of Adam Luis (#26-1, Ex. C);

4.  plaintiff's August 12, 2011, unusual occurrence report (#26-1, Ex. D, p. 15);[3]

5.  plaintiff's relevant NDOC progress notes (#26-1, Ex. D, pp. 16-17);[4]

6.  the declaration of Adam Watson (#26-1, Ex. E);

7.  the declaration of Dr. Marsha Johns (#26-1, Ex. F);

8.  NDOC's Medical Directive ("MD") 410 (#26-1, Ex. G);[5]

9.  NDOC's Administrative Regulation ("AR") 711 (#26-2, Ex. H);[6]

10. plaintiff's August 15, 2011, memorandum in which Dr. Johns re-authorized plaintiff's cane

---

[2] Authenticated by the declaration of Wendy M. McDaniel (#26-1, p. 3, ¶ 6).
[3] Authenticated by the declaration of Wendy M. McDaniel (#26-1, p. 4, ¶ 7).
[4] Authenticated by the declaration of Wendy M. McDaniel (#26-1, p. 4, ¶ 7).
[5] Authenticated by the declaration of Wendy M. McDaniel (#26-1, p. 4, ¶ 8).
[6] Authenticated by the declaration of Maxcine S. Blackwell (#26-1, p. 2, ¶ 5).

1

(#26-2, Ex. I);[7] and

2

11. plaintiff's May 4, 2010, March 16, 2011 and May 11, 2011, Inmate Health Classification

3

System Reclassification and Physical Documentation forms (#26-2, Ex. J).[8]

4

5

Plaintiff opposes defendants' motion for summary judgment on four grounds: (1) defendants

6

Luis and Peery exhibited deliberate indifference to plaintiff's medical needs by confiscating his cane

7

(#28, p. 6); (2) if defendants had not confiscated his cane, plaintiff would not have fallen and injured

8

himself (#28, p. 7); (3) plaintiff's cane was never unauthorized, and defendants fabricated lies to

9

justify their malicious actions (#28, p. 8); and (4) defendants violated the ADA because they refused

10

to accommodate plaintiff's disability for nine days, depriving plaintiff of the benefit of walking

11

without pain (#28, p. 10).

12

The court notes that plaintiff is proceeding *pro se*. "In civil cases where the plaintiff appears

13

14

*pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any

15

doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also*

16

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

17

18

## II.  DISCUSSION & ANALYSIS

19

### A.  Legal Standards

20

#### 1.   42 U.S.C. § 1983

21

22

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting

23

under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290

24

(1999).  Section 1983 does not offer any substantive rights, but provides procedural protections for

25

federal rights granted elsewhere.  *Albright v. Oliver,* 510 U.S. 266, 271 (1994).  To prove liability

26

under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in

27

28

[7] Authenticated by the declaration of Wendy M. McDaniel (#26-1, p. 4, ¶ 9).
[8] Authenticated by the declaration of Wendy M. McDaniel (#26-1, p. 4, ¶ 10).

some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

### 2.  Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where there are no factual disputes.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court will grant summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citations omitted).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson*, 477 U.S. at 248.  Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted, but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**B. Analysis**

**1. Count I—Plaintiff's Eighth Amendment Claim**

A prisoner's claim of inadequate medical care arises under the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). To prevail in an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard—that the deprivation was serious enough to amount to cruel and unusual punishment; and a subjective standard—deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991). A prison official violates the Eighth Amendment when he responds with deliberate indifference to an inmate's serious medical needs. *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton

infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104). In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, a plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment, or that the manner in which prison staff provided medical care indicated deliberate indifference; and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Prison officials have wide discretion when determining the nature and extent of medical treatment to provide to inmates in their care. *See Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Further, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to a prisoner's serious medical need. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). However, a prisoner may establish that such a difference of opinion amounted to deliberate indifference where "the course of treatment the doctors chose was medically unacceptable under the circumstances,"

and such a course of treatment was chosen "in conscious disregard of an excessive risk to the prisoner's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Here, plaintiff contends that defendant Luis exhibited deliberate indifference to plaintiff's medical needs by confiscating plaintiff's cane, and that defendant Peery exhibited deliberate indifference to plaintiff's medical needs by ordering defendant Luis to confiscate plaintiff's cane (#8, p. 4). Defendants admit that plaintiff suffers from some serious medical problems (#29, p. 2). However, even assuming *arguendo* that plaintiff's left leg sciatica or back pain constitutes a serious medical need, the court finds that neither defendant Luis nor defendant Peery exhibited deliberate indifference to plaintiff's medical condition by confiscating his cane.

First, as of May 11, 2011, plaintiff was no longer authorized to use a cane, as it did not appear to be medically necessary (#26-2, Ex. J, p. 32; #26-1, Ex. F, ¶ 9). Plaintiff originally received his cane from an NSP nurse on April 18, 2010 (#26-1, Ex. A). Dr. Gedney authorized the cane on May 4, 2010 (#26-2, Ex. J, p. 30; #26-1, Ex. B, ¶ 7; #26-1, Ex. F, ¶ 6). Approximately one year later, plaintiff's health classification form was updated to reflect his current medical condition (#26-2, Ex. J, p. 32). At that time, the doctor deleted plaintiff's prior health narrative and simply stated that plaintiff should remain in the Carson City area due to his medical problems (#26-2, Ex. J, p. 32; #26-1, Ex. B, ¶ 9; #26-1, Ex. F, ¶ 8). Thus, as of May 11, 2011, plaintiff was no longer authorized to use a cane (#26-1, Ex. F, ¶ 9).

Second, on August 3, 2011, defendant Luis saw plaintiff moving freely throughout the yard without his cane (#26-1, Ex. C, ¶¶ 4-5). This prompted defendant Luis to contact medical to determine whether plaintiff's cane was authorized and whether it was necessary, as plaintiff did not appear to be using it. *Id.* at ¶ 7. Dr. Johns reviewed plaintiff's medical file, discovered that his cane was no longer authorized, and noted that plaintiff appeared to move freely without his cane (#26-1,

Ex. F, ¶ 14).  Dr. Johns states that she never diagnosed plaintiff with sciatica, and opines that even if plaintiff has sciatica, a cane is not medically necessary in treating patients with this impairment.  *Id.* at ¶¶ 10-11.  Dr. Johns also opines that daily use of a cane could contribute to muscle weakness.  *Id.* at ¶ 13.

The court finds that Dr. Johns's decision to remove plaintiff's cane was medically reasonable under the circumstances.  At best, the evidence indicates a difference of medical opinion between Dr. Gedney and Dr. Johns as to whether plaintiff should utilize a cane to assist him with daily mobility.   However, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to a serious medical need.  *Sanchez*, 891 F.2d at 242.  Further, prison officials have wide discretion when determining the nature and extent of medical treatment to provide to inmates in their care.  *See Jones*, 781 F.2d at 771.  Plaintiff has not established that Dr. Johns's decision to remove plaintiff's cane was "medically unacceptable under the circumstances," or that her course of treatment was chosen "in conscious disregard of an excessive risk to [plaintiff's] health."  *Jackson*, 90 F.3d at 332.

Third, although plaintiff asserts that he fell because defendants confiscated his cane, there is no medical evidence supporting this assertion.  The medical staff who responded to plaintiff's "mandown" merely noted that plaintiff had a small laceration below his knee of unknown etiology (#26-1, Ex. D, p. 15).  The medical staff did not conclude that had plaintiff retained possession of his cane, he would not have fallen.  Further, Dr. Johns opined that there is no medical evidence linking plaintiff's fall to not having use of a cane (#26-1, Ex. F, ¶ 15).

Fourth, regarding the actual defendants in this case—Luis and Peery—the court finds that there is no evidence that these defendants acted with the subjective state of mind to deprive plaintiff of necessary care, or that they denied, delayed, or intentionally interfered with plaintiff's medical

treatment.  *See Hutchinson*, 838 F.2d at 394.  Defendant Luis is a correctional officer who was not involved in plaintiff's medical care or treatment decisions.  As a correctional officer, defendant Luis is charged with maintaining safety at NNCC and in decreasing the likelihood that an inmate has unnecessary access to a potential weapon.  Defendant Luis observed plaintiff moving around his unit and the outside yard without assistance from his cane (#26-1, Ex. C, ¶¶ 4-5).  Accordingly, defendant Luis properly contacted medical to determine whether plaintiff had a physician authorization for his cane, and whether the cane was medically necessary.  *Id.* at ¶ 7.  It was only after defendant Luis received confirmation that plaintiff's cane was not authorized and that Dr. Johns had ordered plaintiff's cane to be removed, that defendant Luis confiscated the cane.  *Id.* at ¶ 8.  This does not evidence a conscious disregard for plaintiff's health or safety.

Similarly, defendant Peery is a registered nurse who is unable to authorize impairment aids (such as canes) because he is not a physician (#26-1, Ex. B, ¶ 14).  Defendant Peery's only participation in this matter was that he communicated Dr. Johns's order to defendant Luis, and he recorded the order in plaintiff's medical file.  *Id.* at ¶ 15.  Plaintiff's disagreement with Dr. Johns's medical decision does not evidence deliberate indifference on either Dr. Johns or defendant Peery's part.  *See Franklin*, 662 F.2d at 1344 (prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient).

Plaintiff's claim that defendants Luis and Peery exhibited deliberate indifference to plaintiff's serious medical needs is contrary to the evidence before the court.  Plaintiff has failed to demonstrate the existence of any genuine issues of material fact, and has failed to produce any evidence to suggest that defendants acted in conscious disregard of a significant risk to plaintiff's

health.  Accordingly, the court recommends that defendants' motion for summary judgment (#26) be granted as to plaintiff's Eighth Amendment claim.

### 2.  Count II—Plaintiff's ADA claim

Title II of the Americans with Disabilities Act ("ADA") provides that:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  To establish a claim under the ADA, a plaintiff must demonstrate that: (1) he is a person with a disability; (2) that he is otherwise qualified; and that the defendants' actions either (3) excluded his participation in or denied him the benefits of a service, program, or activity; or (4) otherwise subjected him to discrimination on the basis of his disability.  *See Duffy v. Riveland*, 98 F.3d 447, 455 (9th Cir. 1996).

In *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209-210 (1998), the Supreme Court recognized that the ADA applies to state prisons.  "Although incarceration itself is hardly a 'program' or 'activity' to which a disabled person might wish access, mental health services and other activities or services undertaken by law enforcement and provided by correctional facilities to those incarcerated are services, programs, or activities of a public entity within the meaning of the ADA."  *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (internal quotations and citation omitted).  Inmates must allege that they have been denied the benefits of the services, programs, or activities of the prison, or have been subjected to discrimination, by reason of their alleged disability.  *See Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998).

The Ninth Circuit has found that "the ADA prohibits discrimination because of disability, not inadequate treatment for disability."  *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th

Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . The ADA does not create a remedy for medical malpractice.")); *see also Marlor v. Madison County Idaho*, 50 Fed.Appx. 872, 874 (9th Cir. 2002) ("inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld *by reason* of a disability.").[9]

In addition, other circuits have found that the ADA does not create a federal cause of action for prisoners challenging the medical treatment provided for their underlying disabilities.  *See Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005); *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005); *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 121-22 (7th Cir. 1997).  The above cases suggest that the inapplicability of the ADA to medical decisions lies in the inability to reconcile the essential elements of an ADA claim with the inherent issues in providing medical treatment.  The concern is that such a claim simply makes an end run around the Eighth Amendment.  *See Bryant*, 84 F.3d at 249 ("[C]ourts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners. We would be exceedingly surprised to discover that Congress had made an end run around these decisions in the [ADA].").

For example, under the ADA, a plaintiff is required to demonstrate that he was "otherwise qualified" for the benefits sought and that he was denied those benefits "solely by reason of disability."  *See Fitzgerald*, 403 F.3d at 1144.  As the Tenth Circuit noted:

> Such a plaintiff must prove that he or she was discriminatorily denied medical treatment because of the [handicap] and, at the same time, must prove that, in spite of

---

[9] The court cites *Marlor* in compliance with the rules of this circuit.  *See* Ninth Circuit Rule 36-3(c)(ii) ("[Unpublished dispositions issued before January 1, 2007] may be cited to this Court or by any other courts in the circuit for factual purposes, such as . . . the existence of a related case.").

the [handicap], he or she was "otherwise qualified" to receive the denied medical treatment.  Ordinarily, however, if such a person were not so handicapped, he or she would not need the medical treatment and thus would not "otherwise qualify" for the treatment.

*Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992).  "[T]he term *otherwise qualified* cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning.'"  *Grzan*, 104 F.3d at 121 (quoting *United States v. Univ. Hosp., State University of New York at Stony Brook*, 729 F.2d 144, 156 (2nd Cir. 1984)).  "[W]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was discriminatory."  *Id.*

District courts within this circuit have also underscored that the ADA affords disabled inmates legal rights regarding access to programs and activities enjoyed by all—not a general federal cause of action for challenging the medical treatment of their underlying disabilities.  *See e.g., Mahoney v. Hammond*, 2010 WL 2720759, at *2 (E.D.Wash. June 15, 2010) ("[T]reatment, or alleged lack of medical treatment for Plaintiff's [underlying medical condition] does not provide a basis upon which to impose liability under the ADA."); *Copelton v. Correctional Corp. of Am.*, 2009 WL 4063907, at *6 (D.Mont. Nov. 23, 2009) (same); *Sartain v. Myers*, 2008 WL 731046, at *9 (C.D.Cal. Mar. 13, 2008) (same); *Johnson v. Yates*, 2008 WL 544573, at *3 (E.D.Cal. Feb. 26, 2008) (same).

Here, plaintiff contends that defendants violated the ADA by confiscating his cane for nine days, which deprived him of "the benefits of medical service" and "accommodations to use medical devices" (#8, p. 5).  In other words, plaintiff alleges that he, as a disabled person with a mobility handicap, was entitled to receive a cane for his disability.  Defendants argue that plaintiff's ADA claim is barred by the Eleventh Amendment; that plaintiff cannot establish an ADA violation; and

that even if plaintiff could establish an ADA violation, he is not entitled to recover monetary damages because he cannot establish that defendants acted with deliberate indifference.

Although plaintiff attempts to frame his claim so that it falls within the ADA's purview, it is apparent that plaintiff's claim sounds in medical negligence.  Dr. Johns's medical decision to remove plaintiff's cane is not an appropriate basis upon which to predicate an ADA claim.  Plaintiff alleges that he was denied a benefit (ambulatory aid) *for* his disability.  Plaintiff has not set forth any facts to support a claim that he was subjected to intentional discrimination *by reason of* his disability or excluded from participation in any prison program or activity.   In other words, plaintiff's claim centers around the adequacy of Dr. Johns's medical care and medical decisions, and does not concern discriminatory denial of services, programs or activities.  *Compare Calloway v. Contra Costa County Jail Correctional Officers*, 2007 WL 134581, at *34 (N.D.Cal. Jan. 16, 2007) ("The gravamen of Plaintiff's ADA and RA claim is that as a result of Defendants' failure to deliver adequate medical care to him, he was denied the opportunity to engage in regular prison life, because he was sick . . . [T]he Court is not persuaded that this is an actionable ADA/RA claim . . . [T]he benefits and services that Plaintiff wished to receive are *for* his disability; he does not, in any real sense, allege that he was denied benefits and services *because of* his disability.").

In count II, plaintiff merely alleges a difference of opinion regarding proper medical treatment for plaintiff's back and leg pain—not discrimination under the ADA.  Accordingly, the court recommends that defendants' motion for summary judgment (#26) be granted as to plaintiff's ADA claim.[10]

---

[10] The court recommends granting defendants' motion for summary judgment.  Accordingly, the court does not address defendants' qualified immunity, supervisory liability or official capacity defenses.

### III.  CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that there are no genuine issues of material fact for trial.  Therefore, the court recommends that defendants' motion for summary judgment (#26) be **GRANTED**.  The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV.      RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#26) be **GRANTED**.

**DATED:** July 2, 2013.

_____
**UNITED STATES MAGISTRATE JUDGE**

-16-